UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61688-CIV-COHN/SNOW

AMY ADAMS, et al.,

      Plaintiffs,

v.

SCOTT W. ROTHSTEIN,
TD BANK, N.A., and
GIBRALTAR PRIVATE BANK
AND TRUST COMPANY,

      Defendants.
_____/

## ORDER OF DISMISSAL

**THIS CAUSE** is before the Court upon Defendant TD Bank, N.A.'s ("TD Bank's") Motion to Dismiss [DE 34] and Defendant Gibraltar Private Bank and Trust Company's ("Gibraltar's") Motion to Dismiss [DE 35].  The Court has considered the Banks' Motions, Plaintiffs' Consolidated Response [DE 52] ("Response"), TD Bank's Reply [DE 58], Gibraltar's Reply [DE 59], the related filings, the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On July 28, 2011, 62 Plaintiffs filed this action against Defendants Scott W. Rothstein, TD Bank, and Gibraltar.  See Complaint [DE 1].  In the [Corrected] First Amended Complaint [DE 12], Plaintiffs recount that Defendant Rothstein is currently serving a 50-year sentence in federal prison after pleading guilty to five felony charges relating to one of the largest fraudulent schemes in history.  Corr. First Am. Compl. ¶ 2. Plaintiffs allege that the Banks "played critical roles in selling and facilitating Rothstein's

structured settlement scheme to unwitting investors." Id.

Plaintiffs describe Mr. Rothstein's Ponzi scheme as follows:

> The Rothstein fraud centered on the sale of so-called "confidential structured settlements." In sum, Rothstein solicited investors to purchase interests in litigation settlements that were reached with putative defendants based upon claims of sexual harassment and/or whistle-blower actions. Each of the litigation settlements were purportedly to be paid over a period of time. Rothstein represented to his victims that because these "plaintiffs" were willing to accept a 20-40% discount in exchange for an immediate pay-out, the settlements could be purchased at a discounted value, resulting in a fixed and high yielding rate of return . . . . The investor funded the up-front payment, and in return, was paid back with the pre-funded settlement over time (minus Rothstein's fees and costs), generating a healthy "guaranteed" return.
>
> To induce the investment, investors or their representatives were given executed settlement agreements (with the parties' names redacted), "lock letters" from TD Bank showing that the putative defendant had already funded the entire settlement amount, and audited financial statements of the investment vehicles.

Corr. First Am. Compl. ¶¶ 77-79; Civil RICO Statement [DE 10] at 14 ¶(f)(2).

Plaintiffs contend that they were induced to invest in the Ponzi scheme by an Offering Memorandum and unspecified related documents to purchase interests in two Delaware limited partnerships, Banyon Income Fund, LP and Banyon Income Fund II, LP ("the Banyon Funds"). Corr. First Am. Compl. ¶¶ 80-83; Civil RICO Statement at 14 ¶(f)(2). The Offering Memorandum explained to investors that the Banyon Funds into which each limited partner would invest would pool investors' funds to buy, at a discount, unidentified "Purchased Settlements" from litigants whose full settlement amount had been deposited into an account at an unidentified bank. Corr. First Am. Compl. ¶ 83. The Banyon Funds would then be assigned a right to receive the full payments. Id. Investors were told that they could expect a 30% return on their

investments. Id.

However, "Unbeknownst to Plaintiffs, the investment was nothing more than a Ponzi scheme. The so-called settlements were bogus, the funds were not 'locked' in trust accounts, and the so-called 'guaranteed returns' were illusory. Instead, investor funds were moved between the Defendant Banks in an effort to cover redemptions before the scheme collapsed." Id. ¶ 85; Civil RICO Statement at 15 ¶ (f)(2).

In this action, Plaintiffs assert the following seven counts against Defendants: violation of the Federal Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*(Count I); conspiracy to violate the Federal RICO Act (Count II); fraud (by Plaintiff White Oak Global Advisors, LLC against Defendant TD Bank only) (Count III); aiding and abetting conversion (Count IV); aiding and abetting fraud (Count V); aiding and abetting breach of fiduciary duty (VI); and unjust enrichment (Count VII). In their Motions to Dismiss, the Banks seek dismissal of the entire [Corrected] First Amended Complaint. Plaintiffs oppose dismissal.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

The Banks seek dismissal on a number of grounds. First, both Banks argue that the Private Securities Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964, bars the RICO claims and that the Court should decline to exercise jurisdiction over the remaining state law claims. Second, the Banks contend that Plaintiffs have no derivative standing because (1) any litigation on behalf of Banyon Income Fund, LP must be stayed due to its involuntary bankruptcy, and (2) Plaintiffs fail to satisfy Rule 23.1. Third, Gibraltar argues that the Banyon Funds should be "realigned" as a Defendant instead of a Plaintiff. Fourth, Gibraltar contends that Plaintiffs do not have standing to assert their RICO claims. Finally, Gibraltar claims that Plaintiffs have failed to state a claim with respect to Counts I, II, and IV-VII, and TD Bank claims that Plaintiffs have failed to state a claim with respect to each count of the [Corrected] First Amended Complaint.

As discussed below, the Court agrees with the Banks that the PSLRA bars the RICO claims as a matter of law. Therefore, the Court will dismiss the RICO claims with prejudice. The Court will also decline to exercise jurisdiction over the state law claims and dismiss those claims without prejudice. As such, the Court does not reach the remaining arguments for dismissal.

### A. The PSLRA Bars Plaintiffs' RICO Claims

In Counts I and II, Plaintiffs allege violation of the RICO Act and conspiracy to violate the RICO Act. The RICO Act provides civil and criminal penalties for persons engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962. Specifically, the Act states, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

"To establish a federal civil RICO violation under § 1962(c), the plaintiffs must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Edwards v. Prime, Inc., 602 F.3d 1276, 1291-92 (11th Cir. 2010) (quotations and citations omitted). A "pattern of racketeering activity" "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5); Edwards, 602 F.3d at 1292. "An act of racketeering is commonly referred to as a 'predicate act.'" Edwards, 602 F.3d at 1292. The RICO Act includes a long list of criminal offenses that constitute "racketeering activity" or predicate acts. See 18 U.S.C. § 1961(1).

In 1995, Congress amended the RICO Act by enacting the Private Securities

Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964.  In doing so, Congress effectively "narrow[ed] the type of conduct that can qualify as a predicate act under RICO." Eagletech Commc'ns Inc. v. Citigroup, Inc., No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008).  In pertinent part, the PSLRA provides, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [RICO]."  18 U.S.C. § 1964(c).  The accompanying Conference Committee Report explains that this amendment was intended not only "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prohibit plaintiffs from pleading "other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."  H.R. Conf. Rep. no. 104-396 at 47 (1995); see also Eagletech, 2008 WL 3166533, at *9.

Plaintiffs base their RICO claims on the following predicate acts: "mail fraud, wire fraud, money laundering and racketeering which are indictable under provisions of the U.S. criminal code enumerated in 18 U.S.C. § 1961(1)(B) . . . ."  Corr. First Am. Compl. ¶ 178; see also id. ¶¶ 191-192 (conspiracy to violate RICO count based on the same predicate acts); Civil RICO Statement ¶¶ (a), (e).  The [Corrected] First Amended Complaint explains, "The predicate acts all had the purpose of diverting and misappropriating monies that Plaintiffs and others had invested with and through the Defendants.  The predicate acts were . . . interrelated in that they involved using Plaintiffs' funds."  Corr. First Am. Compl. ¶ 180; Civil RICO Statement ¶ (d)(1) (explaining that Plaintiffs all lost money in the Banyon Funds).  The Banks argue that the PSLRA bars these claims.  Gibraltar's Mot. at 7; TD Bank's Mot. at 11.

As the Banks note, Plaintiffs' limited partnership interests in the Banyon Funds constituted securities, and the alleged predicate acts were sufficiently connected to these securities to fall under the PSLRA bar.  Corr. First Am. Compl. ¶ 69; see also id. ¶¶ 81-85, 177-181.  According to the terms of the Offering Memorandum that induced Plaintiffs to invest in the Banyon Funds, Plaintiffs' limited partnership interests in the Banyon Funds constituted securities.  Specifically, the Offering Memorandum describes the partnership interests as follows:

> The limited partnership interests of Banyon Income Fund, LP are speculative and involve a high degree of risk.  These securities have not been registered with or approved or disapproved by the Securities and Exchange Commission or any other State or Federal governmental agency or any national securities exchange, nor has any such authority passed upon the accuracy or adequacy of this memorandum or the merits of an investment in the interests offered hereby.

Offering Memorandum [DE's 34-1, 34-2] at i.  The Offering Memorandum also contains a "Securities Risk Disclosure" informing the investor, among other things, that "these securities are being offered under an exemption from registration pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "1933 Act"), and Securities and Exchange Commission Regulation D promulgated thereunder . . . ." Id. at ii.  Applicable legal authority and case law further supports the fact that Plaintiffs' limited partnership interests were securities.  As one court explained, "Generally speaking ownership interests in corporations and limited partnerships are considered securities because the partners lack control, while ownership interests in general partnerships and joint ventures tend not to be securities because of the active role of the partners."  AFFCO Invs., LLC v. KPMG, LLP, No. H-07-3379, 2008 WL 5070053, at *5 (S.D. Tex. Nov. 20, 2008) (citing SEC v. Merch. Capital, LLC, 483 F.3d 747, 755-56 (11th Cir. 2007)) aff'd

sub nom. AFFCO Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P., 625 F.3d 185, 189-90, 195 (5th Cir. 2010); see also, e.g., Callison & Sullivan, Partnership Law & Practice § 31:3 (2011) ("Because limited partners are passive investors who have an expectation of profits derived solely from the efforts of general partners, the courts have almost uniformly held that limited partnership interests constitute *securities*.").

Plaintiffs suggest that the PSLRA is inapplicable because the alleged predicate acts are not actionable securities fraud. Resp. at 17. Plaintiffs write that they "were defrauded in their purchase of bogus structured settlements that never existed—not their limited partnership interests." Id. at 18. Thus, Plaintiffs contend, "whether limited partnerships constitute 'securities' is irrelevant given that the fraudulent structured settlement scheme, mail and wire fraud, and money laundering constituted the enterprise . . ." Id. In essence, Plaintiffs attempt to divorce the fraudulent acts from the securities that they purchased. Plaintiffs miss the mark.

To constitute conduct "actionable as fraud in the purchase or sale of securities," the alleged fraud only needs to be '*in connection with*' the purchase or sale of securities." Loftin v. KPMG LLP, No. 02-81166-CIV, 2003 WL 22225621, at *6 (S.D. Fla. Sept. 10, 2003) (citing SEC v. Zandford, 535 U.S. 813, 820 (2002)). The Supreme Court in Zandford explained that fraudulent conduct is "in connection with" the purchase or sale of securities when that alleged fraud "coincides" with securities transactions and the events are "not independent." Zandford, 535 U.S. at 820, 822, 824. As in Loftin, where the PSLRA barred the plaintiff's claims despite the plaintiff's argument that the sale of securities was merely incidental to the alleged fraud regarding the sale of "phony tax advice," Loftin, 2003 WL 22225621, at *6, here, the PSLRA applies despite

8

Plaintiffs' attempt to distinguish their purchase of securities in the Banyon Funds from the fraud in connection with the "bogus structured settlements that never existed."[1]  The Civil RICO Statement explains "All of the funds Plaintiffs transferred to Defendants were through the Banyon Funds," Civil RICO Statement ¶ (e)(2), and "The transfers—wire transfers from Banyon to TD Bank—occurred in 2009 and 2010 pursuant to executed limited partnership subscription agreements for each of the Banyon Funds," id.  Thus, Plaintiffs' only connection to the bogus structured settlements and the alleged fraud regarding those settlements was through the securities they purchased in the Banyon Funds.

Plaintiffs attempt to distinguish the Banks' legal authority by noting that in certain cases cited in the Motions to Dismiss, "the Complaint also pled a securities act violation," or "[t]he crux of each [case] is that the underlying predicate act could also be

---

[1] The sole case that Plaintiffs cite in support of their argument is not persuasive.  Plaintiffs point to a non-binding case from the Southern District of Ohio for the proposition that the PSLRA does not apply to their RICO claims.  Amari v. Spillan, No. 2:08-cv-829, 2010 WL 1980903, (S.D. Ohio May 18, 2010).  In Amari, as here, the plaintiff argued that the predicate acts did not constitute actionable securities fraud and therefore did not fall under the PSLRA bar.  Id. at **6-7.  However, there, the plaintiff relied on a "Funding Proposal Stock Secured Loan" document that stated, "This document *does not* constitute an offer to purchase or sell, or the solicitation of an offer to buy or sell, any securities . . .," id. (emphasis added), whereas here, the Offering Memorandum explicitly stated that the investor *was* purchasing a security, see Offering Memorandum at i-ii.  Further, the court in Amari did not definitively determine that the PSLRA did not apply, but merely held that there were genuine issues of material fact that precluded summary judgment.  Amari, 2010 WL 1980903, at *7.  Here, there are no such barriers to the Court's determination that the PSLRA does apply.  Plaintiffs do not deny that the limited partnership interests they purchased in the Banyon Funds were securities.  See Resp. at 18.  Moreover, their own filings admit that their claims regarding the structured settlement scheme are directly related to their limited partnership interests.  See, e.g., Corr. First Am. Compl. ¶ 69 ("Each of the Plaintiffs invested in Rothstein's structured settlement scheme *through* the Banyon Funds *by purchasing limited partnership interests* in the Funds." (emphasis added)).

9

alleged as securities fraud." Resp. at 18 n.18. However, the PSLRA bar applies regardless of whether a plaintiff can or does plead a cause of action under the securities laws. MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 280 (2d Cir. 2011) (affirming dismissal of wire fraud RICO claims as barred by PSLRA in the Madoff Ponzi scheme even where plaintiff could not bring a private securities law claim); AFFCO Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P., 625 F.3d 185 (5th Cir. 2010) (affirming dismissal of RICO claim as barred by PSLRA even though plaintiff could not assert a section 10(b) securities claim); Bixler v. Foster, 596 F.3d 751, 759-60 (10th Cir. 2010) (affirming dismissal and concluding PLSRA barred plaintiffs' RICO claims); Howard v. Am. Online Inc., 208 F.3d 741, 749 (9th Cir. 2000) (holding that PSLRA bar applies even where plaintiff does not have standing to sue under securities laws), cert. denied, 531 U.S. 828 (2000); Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 330 (3d Cir. 1999) (finding PSLRA bar precluded RICO claim based on Ponzi scheme that was accomplished by the purchase and sale of securities).

Importantly, "a plaintiff cannot avoid the [PSLRA's] bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 330 (3d Cir. 1999); Gatz v. Ponsoldt, 297 F. Supp. 2d 719, 731 (D. Del. 2003) ("A plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading."). "Allowing such surgical presentation of the cause of action here would undermine the congressional intent behind the [PSLRA]." Bald Eagle, 189 F.3d at 330. Similar to Bald Eagle, where "the contention that the conduct alleged as predicate offenses was not in

10

connection with the purchase or sale of securities completely ignores the hard reality that the conduct was an integral part of Black's securities fraud Ponzi scheme," id. at 330, Plaintiffs' assertion that the conduct alleged as predicate acts in this case was not in connection with the purchase or sale of securities ignores that this conduct was an integral part of Rothstein's Ponzi scheme.  As the Third Circuit noted in Bald Eagle, "A Ponzi scheme is ongoing, and it continues only so long as new investors can be lured into it so that the early investors can be paid a return on their 'investment.' Consequently, conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities." Id. at 330. The conduct that forms the basis of Plaintiffs' allegations in this case, by their own admission, was conduct undertaken to keep Rothstein's Ponzi scheme alive through the securities that Plaintiffs purchased in the Banyon Funds.  See Corr. First Am. Compl. ¶¶ 2-3, 6-7, 77-85; see also Civil RICO Statement.

Accordingly, because the PSLRA bars such conduct from forming the basis for a RICO claim, Plaintiffs' RICO claims fail as a matter of law.  Therefore, Counts I and II of the [Corrected] First Amended Complaint will be dismissed with prejudice.  Because the PSLRA bar is dispositive of the motions to dismiss with respect to the RICO counts, the Court does not reach any other arguments insofar as they relate to the federal claims.

### B. The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists." Hertz Corp. v. Friend, 130 S. Ct. 1181, 1193 (2010).  Federal courts are courts of limited jurisdiction.  See 13 Charles Alan Wright, Arthur R. Miller & Edward

H. Cooper, Federal Practice & Procedure § 3522 (2d ed. 1984 & Supp. 2008).  Federal subject matter jurisdiction exists only when a controversy involves diversity of citizenship between the parties or a question of federal law.  See 28 U.S.C. §§ 1331-1332.

The instant case does not involve diversity jurisdiction because complete diversity does not exist.  See 28 U.S.C. § 1332; see also Palmer v. Hosp. Auth., 22 F.3d 1559, 1564 (11th Cir. 1994) (diversity jurisdiction requires complete diversity); see also Corr. First Am. Compl. ¶¶ 20-73 (alleging both Plaintiffs and Defendants who are Florida citizens).  Although Plaintiffs originally alleged federal question jurisdiction over their RICO claims and supplemental jurisdiction over the state law claims, see id. ¶ 74, the Court has now ruled that the RICO claims will be dismissed.  Therefore, there is no remaining basis for original jurisdiction over this case.

A "district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).  Further, "considerations of practicality and comity counsel that a state judge is best equipped to resolve state claims."  Eagletech, 2008 WL 3166533, at *17 (citation omitted).  Therefore, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and thus will dismiss them without prejudice.  Plaintiffs will be permitted to pursue relief in a state forum.

### C. Upcoming Deposition of Scott W. Rothstein

This Court has already granted Plaintiffs leave to participate in the upcoming second deposition of Scott W. Rothstein beginning on June 4, 2012.  See Order on Plaintiffs' Unopposed Motion for Leave to Participate in (Second) Deposition of Scott W. Rothstein [DE 76].  Although the [Corrected] First Amended Complaint will now be dismissed in its entirety, the Court is aware that Plaintiffs may wish to re-file their remaining claims in state court, and that the information obtained at the deposition will likely be useful in the state court action.  Therefore, in the interest of justice, Plaintiffs will still be permitted to participate in the upcoming deposition in accordance with the Court's previous Orders, provided that Plaintiffs file their state court action by no later than June 1, 2012.

### IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant TD Bank, N.A.'s Motion to Dismiss [DE 34] is **GRANTED in part**;

2. Defendant Gibraltar Private Bank and Trust Company's Motion to Dismiss [DE 35] is **GRANTED in part**;

3. Counts I and II are **DISMISSED with prejudice**;

4. Because the Court declines to exercise supplemental jurisdiction over the remaining state law claims, Counts III, IV, V, VI, and VII are **DISMISSED without prejudice** for lack of subject matter jurisdiction;

5. Plaintiffs will still be permitted to participate in the June 2012 deposition of Scott W. Rothstein, provided that they file their state court action by no later than **June 1, 2012**;

6. Any pending motions are **DENIED as moot**, and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 8th day of May, 2012.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF